UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

JIMMIE ELLIS,

        Petitioner,

        v.                                 Case No. 05-CV-1121

GREG GRAMS, Warden,

        Respondent.

_____

**ORDER**

Petitioner Jimmie Ellis ("Ellis") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Ellis was convicted of possessing between five and fifteen grams of cocaine with intent to deliver as a subsequent drug offense in violation of Wis. Stat. §§ 961.41(1m)(cm)2, 961.48. The trial court imposed a 20 year sentence, comprised of a 15 year period of confinement to be followed by a 5 year period of extended supervision. Ellis is currently confined at Columbia Correctional Institution. For the following reasons, the court will deny Ellis' petition.

**BACKGROUND**

A guest of the Economy Inn Motel called the police at approximately 3:50 a.m. on August 26, 2000, and complained that an occupied car, a gray Seville, was in the motel parking lot for approximately one hour, although no one had entered or exited the car, and that it had moved next to the guest's car and was making the guest nervous. (Pet. Ex. A.) Milwaukee Police Officer Mark Wagner and two other officers responded in marked police squads. Upon identifying the car, Officer Wagner

parked his marked squad immediately in front of the car and began to approach the passenger side of the car. Ellis was seated in the front passenger seat. Officer Wagner testified that as he approached Ellis, he observed Ellis "immediately plac[ing] his hands into his waist area." *State v. Ellis*, Case No. 03AP3119-CRNM, 4-5 (May 23, 2005 Wis. Ct. App.). Officer Wagner further testified that Ellis had to have observed the "marked cars and other officers and the fact that [Ellis] would take an action such as [reaching into his waistband], [Wagner] feared that [Ellis] would have a weapon or would be going for a weapon." *Id.* Officer Wagner testified that in response, he and another officer "gave repeated commands for Mr. Ellis to raise his hands." *Id.* Although the driver and the back-seat passenger raised their hands, Ellis kept his hands inside his waistband. (Resp't Answer Ex. HH, 54-56.) Officer Wagner then commanded Ellis to exit the car and Ellis did so. (*Id.*)

Once Ellis was out of the car, Officer Wagner proceeded to start a pat-down search of Ellis, however, Ellis pulled away from Officer Wagner and placed his hands back into his waist area. (*Id.* at 57-58.) Officer Wagner then placed Ellis under arrest and he and another officer handcuffed him. (*Id.* at 59.) Once the officers stabilized Ellis, Officer Wagner searched Ellis' waistband area. (*Id.* at 68.) Officer Wagner testified that he

> searched the front area of the waistband and felt nothing and moved towards the rear of the waistband, at which time I felt a hard object that I was unable to determine what it was. As I removed it, it was a clear plastic baggy containing 59 individually corner cuts of an off-white chunky substance that at the time I believed to be cocaine base.

(*Id.*)

Ellis' postconviction and appellate counsel filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Wis. Stat. Rule 809.32(1) on November 26, 2003. In the no-merit report, appellate counsel addressed: (1) the trial court's exercise of discretion in: (a) denying Ellis' request for successor counsel; (b) denying Ellis' request to represent himself with standby counsel different than his current trial counsel; and (c) repeatedly removing Ellis from the courtroom during his jury trial for intentionally disruptive behavior; (2) the sufficiency of the evidence; (3) the trial court's exercise of sentencing discretion; and (4) the effective assistance of counsel Ellis received from his series of lawyers. Ellis' appellate counsel also anticipated Ellis' complaints about the alleged invalidity of the search and seizure and described the extent of the investigation of the blood evidence identified to be Ellis'. Ellis' appellate counsel explained why it would lack arguable merit to complain about Ellis' trial counsel's failure to pursue the suppression and blood evidence further.

In response to the no-merit report, Ellis complained that: (1) the criminal complaint did not state probable cause; (2) the stop was unconstitutional, rendering invalid the search, seizure, and arrest; (3) further investigation was warranted on how his blood was found on the cocaine packaging; (4) his right to a speedy trial was violated; (5) his trial counsel was ineffective during jury selection; (6) various uncertified documentary trial evidence should have been excluded; (7) the evidence was insufficient; and (8) his trial counsel was ineffective.

On May 23, 2005, the Wisconsin Court of Appeals affirmed the judgment of conviction, determining that there were no potentially meritorious issues raised in the no-merit report or by Ellis. On September 8, 2005, the Wisconsin Supreme Court denied a petition for review.

**DISCUSSION**

Ellis filed a petition for a writ of habeas corpus in federal court on October 24, 2005. The petition sets forth the following grounds: (1) denial of effective assistance of counsel; (2) conviction obtained by use of evidence pursuant to an unlawful arrest; (3) conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (4) insufficiency of the evidence at the preliminary hearing; (5) the trial transcript did not include a certification by the court reporter and the property inventory sheet accompanying the baggy containing the cocaine was not signed; and (6) Ellis was denied his right to a speedy trial. The Wisconsin Court of Appeals addressed the merits of each of these claims in its May 23, 2005, decision when it determined that there were no potentially meritorious issues raised in the no-merit report or by Ellis on appeal.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, governs the grant of a writ of habeas corpus. Under § 2254(d), if a constitutional claim was adjudicated on the merits by the state courts, a federal court may only grant habeas relief based on that claim if the state court's decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the U.S. Supreme Court, or if the state court's determination of the facts was unreasonable in light of the evidence presented. *Id.* A state court decision

must be more than incorrect from the point of view of the federal court; AEDPA requires that it be "unreasonable," which means something like lying well outside the boundaries of permissible differences of opinion. *Williams v. Taylor*, 529 U.S. 362, 410-12 (2000)*.*

Pursuant to 28 U.S.C. § 2254(a), the district court shall entertain an application for the writ on behalf of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The conditions set forth in § 2254(a) are satisfied when the district court concludes there has been a violation of federal law and that the violation played a causal role in the state prisoner's custody. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). When the court considers whether the conditions set forth in § 2254(a) are satisfied, the court is required under the AEDPA to review the state court's adjudication on the merits deferentially and set the state court decision aside only if the court committed unreasonable error. *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). Findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000).

Ellis asserts that he was denied the effective assistance of counsel because his trial counsel failed to object to the admission of evidence or file pretrial motions to exclude evidence, and his appellate counsel should have raised the claim of ineffective assistance of trial counsel on this basis. Ellis also claims that his

appellate counsel was ineffective for filing the no-merit brief on November 26, 2003, instead of filing it on its original due date of May 27, 2003.

The Wisconsin Court of Appeals granted Ellis' appellate counsel leave to file the no-merit brief on November 26, 2003, rather than on its original due date. (Resp't Br. Ex. A.) Because the Court of Appeals considered the arguments raised in the no-merit brief, Ellis was not prejudiced by the delay. *See Strickland v. Washington*, 466 U.S. 668 (1984) (setting forth the two-part ineffective assistance of counsel analysis where claimant must demonstrate (1) that claimant's counsel's representation was deficient and (2) that this deficiency prejudiced the claimant). To succeed in meeting the prejudice prong of *Strickland*, Ellis was required to demonstrate a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. See *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2002). A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome. *See Strickland*, 466 U.S. at 694. Here, given that the Court of Appeals granted Ellis' appellate counsel leave to file the no-merit brief on November 26, 2003, and the Court of Appeals addressed the arguments raised in the no-merit brief, Ellis has not demonstrated that the outcome of the Court of Appeals' decision would have been different if there had been no delay in filing the no-merit brief.

With respect to Ellis' claims that his trial counsel was ineffective for not objecting to the admission of evidence or filing pretrial motions to exclude evidence, and that his appellate counsel was ineffective for not raising the claim of ineffective

-6-
Case 2:05-cv-01121-JPS    Filed 08/10/06    Page 6 of 15    Document 19

assistance of trial counsel on this basis, the Wisconsin Court of Appeals agreed with Ellis' appellate counsel's explanation for why it would lack arguable merit to challenge Ellis' trial counsel's failure to file a suppression motion. The Court of Appeals reviewed these claims in conjunction with Ellis' second and third claims: that his conviction was obtained by the use of evidence pursuant to an unlawful arrest and by use of evidence gained pursuant to an unconstitutional search and seizure.

The Court of Appeals reviewed these claims under the reasonableness standard enunciated in *State v. Richardson*, 156 Wis. 2d 128, 456 N.W.2d 830 (Wis. 1990), which accurately describes the proper standard for determining the validity of an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 30. (1968).

> To execute a valid investigatory stop, *Terry* and its progeny require that a law enforcement officer reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place. *Terry*, 392 U.S. at 30; Wis. Stat. § 968.24. Such reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. These facts must be judged against an "objective standard: would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Id.* at 21-22. This test applies to the stopping of a vehicle and detention of its occupants. *See e.g., United States v. Hensley*, 469 U.S. 221, 226, 233 (1985); *Guzy*, 139 Wis. 2d at 675.

> The focus of an investigatory stop is on reasonableness, and the determination of reasonableness depends on the totality of circumstances:

>> It is a common sense question, which strikes a balance between the interests of society in solving crime and the members of that society to be free from unreasonable intrusions. The essential question is whether the action of the law enforcement officer was reasonable under all the facts and circumstances present.

*Richardson*, 156 Wis. 2d at 139-40, N.W.2d 830 at 834 (citations omitted).

The Wisconsin Court of Appeals determined that under this standard, it would lack arguable merit to challenge an investigatory stop prompted by a citizen's complaint of suspicious conduct by occupants of a car parked in a private parking lot for over a one-hour period in the early morning hours. The Court of Appeals independently concluded that it would lack arguable merit to challenge that investigatory stop or the subsequent pat-down search as "lacking 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Ellis*, Case No. 03AP3119-CRNM, 5. (citing *Terry* 392 U.S. at 21, 30-31).

Ellis contends that under the Supreme Court's holding in *Florida v. J.L.*, 529 U.S. 266 (2000) (holding that a *Terry* stop of J.L. based only on an anonymous tip was constitutionally invalid since the anonymous tip pointing to J.L. lacked a moderate indicia of reliability), the telephone call from the motel guest to the police was insufficient to justify the *Terry* stop in which Ellis was ordered to exit the car. However, the facts in *J.L.* substantially differ from the facts of Ellis' case.

The anonymous caller in *J.L.* was made by an unknown caller from an unknown location. In contrast, Exhibit A to Ellis' petition shows the call here was made by a guest at the motel at approximate 3:50 a.m., who had observed the car, a gray Seville, with multiple occupants sitting in the motel parking lot for over an hour. (Pet. Ex. A.) Additionally, unlike the situation in *J.L.*, where police frisked J.L solely because the anonymous caller had said J.L. was carrying a gun, here Ellis'

suspicious conduct as police officers approached the car to investigate gave the officers more reason to order Ellis to exit the car. Specifically, Officer Wagner saw Ellis put his hands inside his waistband when Officer Wagner approached the front passenger seat. (Resp't Answer Ex. HH, 54-55.) As a result, Officer Wagner was concerned that Ellis might have a weapon. (*Id.*) That concern was reinforced when Ellis, unlike the driver and the back-seat passenger, kept his hands inside his waistband after the police officers ordered him to raise his hands. (*Id.* at 56.) Unlike the situation in *J.L.* where the officers did not observe any unusual movements by J.L., Ellis' conduct as the officers approached gave rise to a reasonable suspicion that he might be armed. Thus, the investigatory stop and the subsequent pat-down search were justified.

Ellis also contends that the Seventh Circuit's holding in *United States v. Packer*, 15 F.3d 654 (7th Cir. 1994) supports his position that the investigatory stop was unconstitutional. However, *Packer* was a direct appeal from a federal conviction. Thus, the Seventh Circuit in *Packer* employed a less deferential standard than the standard of review prescribed by § 2254. Additionally, unlike Ellis, the defendant in *Packer* engaged in no suspicious behavior when the police arrived. Furthermore, the car in *Packer* was parked on a public street, and here, the car Ellis was in was parked in a private parking lot and the police were informed by the motel guest that the car had been there for more than an hour. (Pet. Ex. A.).

In light of the foregoing, the court concludes that Ellis fails to show that the Wisconsin Court of Appeals acted unreasonably when it determined that Ellis was

-9-
Case 2:05-cv-01121-JPS    Filed 08/10/06    Page 9 of 15    Document 19

not denied the effective assistance of counsel as a result of the delayed filing of the no-merit brief or by counsels' decision to not challenge the *Terry* stop and the subsequent pat-down search, and that Ellis' conviction was not obtained by use of evidence pursuant to an unlawful arrest or by the use of evidence gained pursuant to an unconstitutional search and seizure.

Ellis also challenges the sufficiency of the evidence at the preliminary hearing. Ellis claims that the evidence at the preliminary hearing was insufficient to bind Ellis over for trial. Because Ellis did not file a petition for leave to appeal the trial court's bind-over decision, he procedurally defaulted a direct attack on that decision. However, the Wisconsin Court of Appeals reviewed Ellis' sufficiency claim under the standard enunciated in *State v. Dunn*, 121 Wis. 2d 389, 393, 359 N.W.2d 151, 153 (Wis. 1984): "A defendant may be bound over for trial when the evidence at the preliminary hearing is sufficient to establish probable cause that a felony has been committed and that the defendant probably committed it." The Court of Appeals reviewed the evidence presented at the preliminary hearing, which included the testimony of two Milwaukee Police Officers, and determined that challenging the bind-over decision would lack merit.

Ellis contends that it was insufficient for the state to rely on the results of a cobalt thiocyanate test to prove for purposes of the preliminary hearing that the substance in Ellis' possession was cocaine. In support of this position, Ellis cites to *State v. Jackson*, 161 Wis. 2d 527, 468 N.W.2d 431 (Wis. 1991) (holding that a cobalt thiocyanate test is nonspecific and at most raises a presumption of the

presence of cocaine). However, the state in *Jackson* relied on the results of a cobalt thiocyanate test to support a conviction. *Id.* Here, the trial court relied on the test results to support a bind-over. Thus, the evidence needed only to establish probable cause, and as the *Jackson* court held, the results from a cobalt thiocyanate test "may have been sufficient for a finding of probable cause." *Id.* at 529, 468 N.W.2d at 431. Moreover, at the preliminary hearing, the state presented more than just the results of the cobalt thiocyanate test. The state also presented testimony that the substance was packaged into 59 corner cuts that Ellis had concealed in his underwear. (Resp't Answer Ex. J, 4-5.) Coupled with the positive results from the cobalt thiocyanate test, the evidence of packaging and concealment was sufficient to establish probable cause that a felony had been committed and that Ellis probably committed it.

In light of the foregoing, the court concludes that Ellis fails to show that the Wisconsin Court of Appeals acted unreasonably when it determined that sufficient evidence supported the trial court's decision to bind Ellis over for trial, and that Ellis' trial counsel was not ineffective under *Strickland* in failing to challenge the bind-over.

Ellis also claims that since various trial court transcripts did not include a certification by the court reporter, and the property inventory sheet accompanying the baggy containing the cocaine was not signed, those documents should not have been used at trial.

The Wisconsin Court of Appeals noted that Ellis' claim that the transcripts were not signed appears to be a complaint about the form of the transcripts rather

than the substance because Ellis did not quarrel with the accuracy or the authenticity of the transcripts. Additionally, the Court of Appeals determined that to challenge the property inventory sheet's admissibility would lack arguable merit, particularly since the jury was informed by Officer Wagner's testimony that he forgot to sign it.

Contrary to Ellis' objections the trial court transcripts do contain certifications by the court reporter. (Resp't Answer Exs. HH, 143; II, 166; JJ, 24; KK, 7; LL, 46.) Moreover, Ellis does not claim that the transcripts were inaccurate. In regards to the missing signature on the property inventory sheet, the Court of Appeals reasonably concluded that the report was admissible because the jury was informed that the report was unsigned by Officer Wagner, and as Ellis' appellate counsel explained in the no-merit report, the report was admissible under Wis. Stat. § 908.03(8), the public records exception to the hearsay rule.

In light of the foregoing, the court concludes that Ellis fails to show that the Wisconsin Court of Appeals acted unreasonably when it determined that the trial transcripts and the property inventory sheet were admissible, and found that Ellis' trial counsel was not ineffective under *Strickland* in failing to challenge those documents.

Finally, Ellis claims he was denied his right to a speedy trial. However, Ellis admits in his petition that none of his successive attorneys demanded a speedy trial. Because none of his attorneys asserted that Ellis' constitutional right to a speedy trial was violated, this claim will be analyzed within the framework of ineffective assistance of counsel under *Strickland*.

-12-
Case 2:05-cv-01121-JPS   Filed 08/10/06   Page 12 of 15   Document 19

The Wisconsin Court of Appeals determined that Ellis was substantially responsible for the delays in his trial. The trial court set Ellis' case for trial numerous times, however, Ellis' actions required the trial date to be put off for 20 months after his arrest. For example, Ellis had entered and then withdrew a guilty plea. *Ellis*, Case No. 03AP3119-CRNM, 6. After a competency hearing Ellis was found competent to proceed to trial. *Id.* Trial was adjourned several times to accommodate Ellis' series of lawyers and his request to test the blood on the baggy containing the cocaine. *Id.* Additionally, Ellis was extremely disruptive and uncooperative during the court proceedings. *Id.* at 7. Thus, the Court of Appeals concluded that it would lack arguable merit to claim that Ellis' constitutional right to a speedy trial was violated.

The court concludes that the record supports the Court of Appeals' decision. For example, Ellis was scheduled to be tried on May 16, 2001. (Resp't Answer Ex. T, 2.) But on that day Ellis' attorney stated that Ellis wanted to fire her and she requested a competency determination based on Ellis' erratic behavior. (*Id.* at 2-4.) The trial court suspended the proceedings to allow a competency evaluation under Wis. Stat. § 971.14. *(Id.)*

At the next status hearing on June 5, 2001, a different attorney appeared for Ellis and said Ellis' family had retained him. (Resp't Answer Ex. U, 2-3.) Because the trial court had not allowed Ellis' prior attorney to withdraw, and because the competency issue was unresolved, the trial court set a new date for a return on the competency report and the withdrawal motion (*Id.* at 3-8.) On June 26, 2001, the

trial court found Ellis competent to stand trial and the new attorney was substituted for Ellis' first attorney. (Resp't Answer Ex. V, 4-5.) On August 22, 2001, however, for health reasons, Ellis' second attorney was allowed to withdraw from representing Ellis. (Resp't Answer Ex. W, 3.)

A third attorney was appointed in late August 2001, and the jury trial was set for December 10, 2001. (Resp't Answer Exs. X, 2; Z, 8.) On that date, Ellis' attorney asked for an adjournment because Ellis told him he wanted to have the blood found on the baggy which contained the cocaine tested to see if it was Ellis' blood. (Resp't Answer Ex. BB, 2-3.) The trial court reluctantly granted the adjournment and the jury trial was set for February 20, 2002. (*Id.* at 9.)

As of February 9, 2002, the blood testing had not been done because defense counsel did not receive the prosecutor's letter stating that the state would not pay for the testing, so the cost had to be absorbed by the defense. (Resp't Answer Ex. CC, 2-3.) Ellis agreed to yet another adjournment and after warning that it would not grant any more adjournments, the trial court set April 29, 2002, as the trial date. (*Id.* at 4-6.)

The record demonstrates that the delay between May 16, 2001, and the start of trial on April 29, 2002, was substantially attributable to the defense. Additionally, portions of the delay prior to May 16, 2001, were also caused by Ellis, who first entered a guilty plea, then vacillated about whether he wanted to withdraw it. (Resp't Answer Exs. M, O, P, Q.) In light of the foregoing, the court concludes that Ellis fails to show that the Wisconsin Court of Appeals acted unreasonably when it determined

-14-
Case 2:05-cv-01121-JPS    Filed 08/10/06    Page 14 of 15    Document 19

that Ellis' trial counsel was not ineffective under *Strickland* for foregoing a speedy trial demand or a claim that Ellis' right to a speedy trial had been violated.

In conclusion, Ellis fails to demonstrate that the Wisconsin Court of Appeals' decision in his case was contrary to, or constituted an unreasonable application of any clearly established U.S. Supreme Court precedent within the meaning of § 2254(d)(1), or demonstrate that the decision resulted in an unreasonable determination of the facts in light of the evidence presented at state court within the meaning of § 2254(d)(2). Thus, under 28 U.S.C. § 2254(d), the court is obliged to deny Ellis' petition for a writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that Ellis' petition for a writ of habeas corpus (Docket # 1) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this   10th   day of August, 2006.

BY THE COURT:

  s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge